# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARTIN W. SHEERER, on his own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONAL CITY CORPORATION, <br><br> Defendant. | No. _____ |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Martin W. Sheerer, by his undersigned counsel, files this Complaint, on his own behalf and on behalf of all members of the class hereinafter defined, against Defendant National City Corporation.

## PARTIES

1. Plaintiff Martin W. Sheerer is an adult individual residing in the Commonwealth of Pennsylvania. Sheerer brings this action on behalf of himself and all other persons similarly situated, namely, all shareholders of Defendant National City Corporation (hereinafter "National City") who purchased or otherwise acquired shares of National City on or after May 1, 2008 (the "Class Period").

2. Defendant National City Corporation ("Defendant" or "National City") is a financial holding company with interests in banking and financial services, including commercial and retail banking, mortgage financing and servicing and consumer finance.

National City maintains business locations and regularly conducts business throughout the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action and venue is proper pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78aa, which permits actions for securities fraud filed pursuant to Section 10(b) to be brought in any district in which the defendant is found or transacts business.

## CLASS ACTION ALLEGATIONS

4. This action is brought as a class action on behalf of all shareholders of Defendant who purchased shares on or after May 1, 2008. Excluded from the class are Defendant National City Corporation and its subsidiaries and any officer or director of Defendant National City Corporation.

5. Plaintiff is a member of the Plaintiff class. Plaintiff purchased 30,000 shares of Defendant's stock during the Class Period. Plaintiff continues to own 25,000 of these shares, which ownership stake is sufficiently substantial to warrant and ensure active interest and participation by Plaintiff in this action, and the diligent and effective prosecution thereof. Plaintiff, as representative of the class, will therefore fairly and adequately protect the interests of the class and of the individual members thereof.

6. The Plaintiff class is believed to include thousands of members and is, therefore, so numerous that joinder of all members would be impracticable. The precise

number of class members, and the identity of each member, can be readily determined from Defendant's own records.

7. There are questions of law and fact common to all members of the Plaintiff class, and such common questions will predominate over any questions that affect or might affect only individual members of the class in the disposition of this action. Such common questions of law and fact include:

> (a) whether Defendant violated the federal securities laws by the acts alleged herein;
> (b) whether statements disseminated by Defendant to the investing public and to the shareholders of National City during the class period omitted and/or misrepresented material facts about the business operations and prospects of the Company;
> (c) whether Defendant acted willfully or recklessly in omitting and/or misrepresenting material facts;
> (d) whether Defendant's non-disclosures and/or misrepresentations constituted a fraud on the market by artificially inflating the market prices of National City common stock during the class period; and
> (e) whether the members of the class have sustained damages and, if so, what is the proper measure of such damages.

8. A class action is superior to any other available method for the fair and efficient adjudication of the controversy between the class and Defendant.

9. The claims of the named plaintiff, representative of the class, are typical of the claims of the class.

10. The Plaintiff class representative will fairly and adequately assert and protect the interests of the class as required by Fed. R. Civ. P. 23. In particular: (1) the undersigned attorneys will vigorously and adequately represent the interests of the class; (2) the class representatives have no conflict of interest in maintaining a class action; and (3) the class representatives have adequate financial resources to assure that the interests of the class will not be harmed.

11. As set forth on Exhibit 1 attached hereto, the named Plaintiff qualifies to act as the Plaintiff class representative in this action.

12. The prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant, and adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members of class, or would substantially impair or impede their ability to protect such interests.

13. Defendant has acted and refused to act on grounds generally applicable to the class.

## GENERAL FACTUAL ALLEGATIONS

### Background Facts

14. Defendant is a diversified, multi-jurisdictional owner and operator of a national bank that operates branches primarily in the states of Ohio, Pennsylvania, Michigan and Florida.

15. Beginning in late 2007 or early 2008, it became apparent to certain members of the banking industry that there was an impending crisis in what has become known as the "subprime lending market" that could endanger the financial stability of banking and investment companies.

16. In a well-publicized series of events, Defendant was one of the first institutions to recognize the magnitude of the subprime problem and took numerous steps to ensure its ability to remain in business, including, *inter alia*, (a) raising approximately

Case 2:03-mc-02025 Document 1475 Filed 10/27/2008 Page 5 of 13

one billion six hundred million dollars ($1,600,000,000) in January 2008 through the issuance of debt and convertible preferred stock, and (b) raising a further seven billion dollars ($7,000,000,000) in May 2008 through the issuance of common shares to Corsair Capital ("Corsair") that diluted the then-existing shareholders of the Defendant (the "Capital Infusion").

Materially False and Misleading Statements Issued During the Class Period

17. During and after the Capital Infusion, Defendant continuously made statements to the public about its well-capitalized position, its ability to maintain its independence, its financial stability and the fact that as one of the first institutions to raise capital in the current financial crisis, it had positioned itself to act in the best interests of shareholders to maintain the option of remaining in business for the long term. It is now apparent that all of those statements were materially false and misleading, and further induced the Plaintiff and thousands of other unsuspecting shareholders to purchase and/or retain stock of the Defendant.

18. On or about October 24, 2008, Defendant agreed to a buyout from PNC Financial Services Group, Inc. ("PNC"). According to several press organizations PNC plans to buy National City Corp for about $5.2 to $5.6 Billion in stock after receiving U.S. Treasury funds. Under the terms of the agreement, National City shareholders would receive 0.0392 share of PNC common stock for each share of National City stock for a total sale price of approximately $5.2 billion. Based on the October 23, 2008 closing price of PNC stock, the value National City shareholders are to receive is approximately $2.23 per share. National City's common stock closed at $2.75 per share on October 23,

2008—meaning the proposed merger calls for National City shareholders to exchange their shares at a 19% discount to the previous day's closing price.

19. In the weeks prior to the announced merger, and during the Class Period, the United States government unveiled a plan to rescue national banks known as the Troubled Assets Relief Program, or "TARP" pursuant to which the United States Treasury would provide capital to institutions affected by the financial crisis in multiple unspecified ways, including without limitation the purchase of preferred stock or other securities by the government, or potentially the direct purchase of impaired loans.

20. On multiple occasions during the Class Period, Defendant represented in public statements that it was interested in participating in the TARP program and in fact, during an earnings call convened as late as two days before the announcement of the merger, Defendant's CEO made the following statement:

> **With respect to the TARP capital program that was announced last week, I think what we'd say at this point is we are interested in it and analyzing what the implications would be for our shareholders of participating. As we said a number of times, prior to that program being announced I don't think we felt that we were in a position of needing more capital.**
>
> **But, given the announcement of the program and trying to understand the landscape as it will impact broadly the industry, I will tell you we're in analysis mode and studying it and attempting to determine whether we think applying for that capital would be in the best interest of our shareholders or not.**

This statement was consistent with the prior statements of the CEO, the CFO and other agents and representatives of Defendant which represented that Defendant was well-capitalized and in a position to apply to participate in the TARP program.

-6-

21. Following the announcement of the merger with PNC, in multiple public statements by the Defendant, PNC and government officials, the following "facts" have been alleged to exist which in part have given rise to this lawsuit:

> \*   In the weeks prior to the announced merger, the Comptroller of the Currency, as the chief regulator of National City, ordered it to find a buyer. Defendant failed to disclose the existence of this order. That omission was a materially false and misleading fact that induced shareholders to purchase the Defendant's stock.
> \*   According to published reports, the loan loss reserves of National City are so far less than the required amount to pay the anticipated loan losses that the capital base of Defendant will be wiped out after the merger as PNC writes off the bad loans. If these statements are true, the prior statements by Defendant that it was among the most well-capitalized institutions in its industry were materially false and misleading.
> \*   That the federal government told the Defendant, <u>prior</u> to the CEO making contrary public statements, that National City would not be allowed to participate in the TARP program nor would the government buy preferred stock of Defendant. These material facts make the subsequent statements that the Defendant was looking at its options under the TARP program materially false and misleading.

**<u>Applicability of Presumption of Reliance: Fraud on The Market Doctrine</u>**

22. At all relevant times, the market for National City's common stock was an efficient market for the following reasons, among others:

> (a) National City's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market.
> (b) As a regulated issuer, National City filed periodic public reports with the SEC and the NYSE;
> (c) National City regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;
> (d) National City was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their

-7-

respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

23. As a result of the foregoing, the market for National City's stock promptly digested current information regarding National City from all publicly-available sources and reflected such information in the price of National City's stock. Under these circumstances, all purchasers of National City's stock during the Class Period suffered similar injury through their purchase of National City's stock at artificially inflated prices and a presumption of reliance applies.

**No Safe Harbor**

24. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendant is liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of National City who knew that those statements were false when made.

## COUNT I
## Securities Fraud Based Upon a Misrepresentation in
## Violation of Section 10(b) and/or Rule 10b-5 of the 1934 Securities Exchange Act

25. Plaintiff repeats the foregoing paragraphs as if fully set forth herein.

26. From May through October 2008, Defendant made various misstatements and misrepresentations of material fact as complained of herein, including statements that it was eligible to participate in the TARP program and that its loan loss reserves were adequate to cover anticipated losses.

27. The foregoing statements were false and untrue.

28. Defendant acted knowingly and with scienter in making the foregoing statements.

29. Defendant's misstatements and misrepresentations were made in connection with and/or related to and affected a sale of securities, namely, the stock of Defendant.

30. Defendant made the misstatements and misrepresentations by means of the mails or some other device or instrumentality of interstate commerce, or of any facility of any national securities exchange.

31. Plaintiffs reasonably relied on Defendants' misstatements and misrepresentations, and such reliance is presumed as a matter of law.

32. Plaintiffs suffered injury, including money damages, as a direct and proximate result of Defendant's misstatements and misrepresentations.

## COUNT II
## Securities Fraud Based Upon Omission or Failure to Disclose in Violation of Section 10(b) and/or Rule 10b-5 of the 1934 Securities Exchange Act

33. Plaintiff repeats the allegations in the foregoing paragraphs as if fully set forth herein.

34. From May through October 2008, Defendant made various omissions as complained of herein, including the failure to disclose that it was ordered by the Comptroller of the Currency to find a buyer, that it was told that it was not going to be permitted to participate in the TARP program, that its loan loss reserves were as underfunded as has been alleged in news reports and that its capital base (and therefore its book value) was in danger of being completely eroded by bad loans and/or investments.

35. Defendant's omission or failure to disclose concerned one or more material facts.

36. Defendant made the omission knowingly, or with reckless disregard for the truth thereof, and with the intent to deceive or defraud.

37. Defendant made the omission in connection with and/or related to and affected a sale of securities, namely, the stock of Defendant.

38. Defendant made the omission by means of the mails or some other device or instrumentality of interstate commerce, or of any facility of any national securities exchange.

39. Defendant owed Plaintiffs a duty to disclose the correct state of affairs.

40. Defendant's omission created a material misimpression, which induced Plaintiffs to purchase and/or retain the security at issue.

41. Defendant's material omission proximately caused Plaintiff to suffer monetary damage.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered in favor of the Plaintiff class and against Defendant National City Corporation as follows:

(a) Certify a Plaintiff class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

(b) Award compensatory damages in favor of the Plaintiff class and against Defendant an amount to be proven at trial, including all interest thereon;

(c) Award plaintiffs and the class reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

(d) Award such other and further relief as the Court deems appropriate.

### JURY DEMAND

Plaintiffs hereby requests a trial by jury.

_/s/ Samuel P. Kamin_
Samuel Kamin, Esquire
Pa. I.D. No. 00707

1806 Frick Building
437 Grant Street
Pittsburgh, PA 15219

Tel.: 412-281-1119

*[signature]*

Jonathan Kamin, Esquire
Pa. I.D. No. 81958

1806 Frick Building
437 Grant Street
Pittsburgh, PA 15219

Tel.: 412-281-1119

*[signature]* / SMH

Charles E Davidson, Esquire
Pa. I.D. No. 49398

27 N Collinwood Dr.
Pittsburgh, PA 15215

*[signature]*

Scott M. Hare, Esquire
Pa. I.D. No. 63818

1806 Frick Building
437 Grant Street
Pittsburgh, PA 15219

Tel: 412-338-8632

Counsel for Plaintiffs

Date: October 27, 2008

-12-

| Exhibit 1 |
|---|

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, Martin W. Sheerer, having personal knowledge of the facts contained in this sworn certification, being competent to testify to them, and being over the age of eighteen (18) years, hereby certify as follows:

I have reviewed the foregoing Complaint and authorized its filing.

I did not purchase the security that is the subject of the complaint at the direction of counsel in order to participate in a private action arising under the Private Securities Litigation Reform Act.

I wish to serve as lead plaintiff in this action and all other related actions that may be consolidated with it. I am willing to provide testimony at deposition and trial.

The following are all transactions by me in said security during the class period specified in the complaint:

| Trade Date | Number of Shares |
|---|---|
| 9/30/08 | 25,000 |
| Post 9/30/08 | 5000 |

I have not filed any other actions under the federal securities laws in the last three years in which I sought to serve as a class representative.

I affirm that I will receive no payment for serving as a class representative beyond my pro rata share of any recovery, except reimbursement of expenses authorized by the Court.

I declare under penalty of perjury that the statements herein are true and correct to the best of my knowledge, information and belief.

*/s/ Martin W. Sheerer*
Martin W. Sheerer

Sworn to and subscribed before me
on this 27th day of October, 2008.

*/s/ Donna J. Hirschfield*
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Donna J. Hirschfield, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires July 22, 2012
Member, Pennsylvania Association of Notaries